UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLIFF CROWLEY ET AL., : | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:09-CV-1991 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ANGELO COSTA ET AL., | : | NOVEMBER 17, 2011 |
| Defendants. | : | |

**RULING RE:
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 36) AND
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. No. 43)**

**I.   INTRODUCTION**

Plaintiffs Cliff Crowley, as the owner of the yacht "Moondance," and the New Hampshire Insurance Company ("Crowley") brought this admiralty and maritime action against defendants Angelo Costa and Charles J. Costa, trustee of the Angelo P. Costa Revocable Trust ("Costa").  Crowley seeks declaratory judgment on four counts regarding his liability for damage to Costa's pier caused by the Moondance when it broke from its mooring during a storm.  Costa now moves for summary judgment on the issue of Crowley's liability in negligence and on the issue of Crowley's eligibility for exoneration or limitation of liability, and Crowley cross-moves for summary judgment, claiming that Costa cannot recover damages because his pier exceeded the length permitted by its permit.

## II.   BACKGROUND[1]

Crowley purchased the Moondance, a forty-four foot sailing vessel, in 2006, and kept the boat moored at the Black Rock Yacht Club in Black Rock Harbor.  Prior to the events in question, the Moondance had a value of around $290,000.  Crowley claims to have a permit to moor the Moondance in Black Rock Harbor from the Bridgeport Harbor Master, which Costa denies.[2]  See Plaintiffs' Local Rule 56(a)(2) Statement (Doc. No. 44) ("Pls.' L.R. 56(a)(2) Stmt.") ¶ 1.  Crowley also claims that the Moondance's mooring was inspected by the Bridgeport Harbor Master in 2008, that its penants were replaced in 2008, and that Crowley himself inspected the penants on October 19 and found them free of appreciable wear.  See Pls.' L.R. 56(a)(2) Stmt. ¶¶ 3, 5.

Crowley used the Moondance on October 19, 2008 before leaving for a trip to Europe.  On October 25, 2008, a storm caused the Moondance to break free of its

---

[1] Unless otherwise cited, the following facts are based upon the uncontested portions of the parties' Local Rule 56(a) Statements.

[2] Costa cites page twelve of the Deposition of Harbor Mastor Scinto for the assertion that "Harbor Master Scinto testified that his office did not have a mooring application for Bridgeport Harbor from Plaintiff Crowley for 2008."  Defs.' 56(a)(1) ¶ 47.  Costa does not include this page of the deposition transcript among the pages submitted as Exhibit 6 (Doc. No. 51-8) to his Memorandum in Opposition to Plaintiffs' Cross-Motion (Doc No. 51).  Crowley cites to page forty-four of Scinto's deposition, which reads, in relevant part:

> Q: Does that lead you to conclude that he did, in fact, have a permit in 2008?
> A: That would conclude that, yes.
> Q: Okay.  Now –
> A. I'm sorry.  Can I just see the number, the sticker number on this one?
> Q: The sticker number is 0158.
> A: Okay.
> Q: The –
>   MR. BOHONNON: You said the stucker number, is that –
>   THE WITNESS: Number of sides.
>   MR. BOHONNON: Is that the same for the –
>   THE WITNESS: No.
>   MR. BOHONNON: So it is a different sticker, different boat, okay.
>   MR. TISDALE: Is it a different boat?

At that point, page forty-four ends, and page forty-five is not reproduced for the court.  The court is therefore unable to evaluate either party's claims about Scinto's testimony.

mooring and collide with Costa's pier.  The parties disagree as to whether the weather was worse than average or worse than had been predicted.  See Defendants' Local Rule 56(a)(1) Statement (Doc. No. 36-2) ("Defs.' L.R. 56(a)(1) Stmt.") ¶ 41 ("weather was . . . in no way unusual for October"); Pls.' L.R. 56(a)(2) Stmt. ¶ 7 ("The . . . storm came up suddenly and was not predicted.").  Parties also disagree as to whether the storm constitutes an "Act of God."  See Defs.' L.R. 56(a)(1) Stmt. ¶ 43.

Costa claims that Black Rock Yacht Club manager Ed Billings emailed club members on the morning of October 25, 2008, about the impending weather, which Crowley denies.  See Defs.' L.R. 56(a)(1) Stmt. ¶ 12.  Mr. Billings testified that he "usually send[s] out a blanket e-mail" to club members in case of oncoming bad weather, "[b]ut obviously it would have been too late that morning."  Billings Dep. Tr. (Doc. No. 46-16) 28.  He further testified that he did not specifically recall sending out such an email on October 25, 2008.  Billings Dep. Tr. 29.

Crowley returned from his trip around 9 p.m. on October 25, 2008.  Upon landing in New York, Crowley found out from another club member that the Moondance had collided with Costa's pier.  He went to view the boat around 8 a.m. on October 26, 2008.

Costa's 320-foot pier was built in 1957, with a permit authorizing a 160-foot pier. The parties disagree about the extent to which the pier had degraded due to its age prior to the accident.  Compare Pls.' L.R. 56(a)(2) Stmt. ¶ 19 (90% depreciation) with Defs.' L.R. 56(a)(1) Stmt. ¶ 30 (no "serious depreciation").  The parties and their experts further disagree about the difficulty Costa might have in obtaining a permit to rebuild the pier to 320 feet.  Compare Defs.' L.R. 56(a)(1) Stmt. ¶ 39 (deponent "did not foresee any objections retaining the pier as it is currently configured") with Pls.' L.R. 56(a)(2)

3

Stmt. ¶ 27 ("The State would not allow Costa to rebuild the dock to 320' unless Costa agreed to subdivide his property into three parcels."). Costa cites estimates of $300,000 and $351,540 to repair the pier. See Defs.' L.R. 56(a)(1) Stmt. ¶¶ 35, 68. Crowley cites quotes of $42,300 and $154,760 to repair the damage. Pls.' L.R. 56(a)(2) Stmt. ¶ 25.

Eventually, Crowley retrieved and repaired the Moondance, at a cost of around $203,000. Crowley raced the Moondance in 2009. In fall 2009, Crowley sold the Moondance for "somewhat less" than $275,000.

### III. PROCEDURAL HISTORY

In 2009, Crowley initiated this case by filing a Complaint for Declaratory Relief pursuant to this court's admiralty jurisdiction. See Compl. (Doc. No. 1). He asserts four counts: first, that he should be exonerated from all liability arising out of the allision because he took all necessary precautions in mooring the Moondance; second, that Costa's pier had no economic value because it exceeded its permitted length, and therefore Costa did not suffer any damages as a result of the allision; third, that Costa's pier was 90% depreciated at the time of the allision, and that Crowley's liability should therefore be limited to 10% of the cost of repair; and fourth, that Crowley's liability should be limited to the post-allision, pre-repair value of the Moondance. See Amended Compl. (Doc. No. 10) 4-6.

Costa counter-claims that the damage to his pier was caused by Crowley's "acts, omissions, strict liability, fault, negligence, and breach of federal safety and operating regulations." Defs.' Answer to Verified Compl. and Counterclaims (Doc. No. 18) ("Defs.' Answer") 5-6. Costa also asserts four affirmative defenses: that Crowley's Petition for

Limitation and/or Exoneration is not timely; that Crowley had "privity and knowledge" of the conditions that resulted in the Moondance breaking free; that Crowley knew of conditions rendering the Moondance unseaworthy; and that Crowley's claim that Costa's pier was "illegal" is barred by laches. Defs.' Answer 4.

In response to Costa's counter-claim, Crowley asserts four affirmative defenses: failure to state a cause of action; that the damage was caused by an Act of God or peril of the sea; that Crowley is not responsible for the loss; and that Crowley's liability is limited to the value of the Moondance.  Plaintiffs/Counterclaim Defendants' Answer to Defendants' Counterclaim (Doc. No. 31) 2.

Costa filed a timely Motion for Summary Judgment on the issue of Crowley's liability in negligence for the damage to Costa's pier, and on the issue of Crowley's eligibility for exoneration or limitation under the Limitation of Liability Act, 46 U.S.C. §§ 30501 et seq. Defs.' Mot. for Summ. J. (Doc. No. 36).  Crowley moved for summary judgment [after the April 15 deadline] on  May 18, 2011, arguing that Costa cannot recover damages because his pier exceeded the length allowed by its permit.  Pls.' Cross-Motion for Summ. J. (Doc. No. 42).

IV. **STANDARD OF REVIEW**

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id.  In making this determination,

5

the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Fed.R.Civ.P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed.R.Civ.P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere "'scintilla'" of evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

**V.   DISCUSSION**

    A.   Crowley's Cross-Motion

In his Cross-Motion for Summary Judgment, Crowley claims that judgment should be entered in his favor because the length of Costa's pier exceeds the length authorized by its permit.  See Pls.' Cross Mot. 12.  He cites Ertel v. Rocque, 2005 WL 469224, No. CV030100647S (Conn. Super. Jan. 21, 2005), aff'd, 108 Conn. App. 48 (2008), for the proposition that "a landowner does not have a property right in a pier that

6

does not conform to the permit authorizing its construction.  See Pls.' Cross Mot. 11.  In Ertel, the Superior Court rejected the claim that the Department of Environmental Protection's refusal to issue a permit constitutes a taking under the Connecticut Constitution.  See generally Ertel, 2005 WL 469224.  That the plaintiff in Ertel lacked a property interest in his non-conforming dock (which was subject to an order to remove) sufficient to support a takings claim does not establish that Costa has no property interest in his dock for the purpose of recovering damages from Crowley.  Crowley offers no other support for the proposition that the owner of a non-conforming structure is barred from recovering for damage to the structure, nor can the court locate any such authority.  Therefore, Crowley's Cross-Motion for Summary Judgment is denied.

    B.    Costa's Motion

    1.    Crowley's Negligence

Costa first argues that he is entitled to summary judgment on the issue of Crowley's negligence.  In The Louisiana, 70 U.S. 164 (1865), the Supreme Court established that a moored vessel that breaks away and allides with a stationary object is presumed to be at fault unless it can show that the drifting was the result of a vis major or inevitable accident, which "a proper display of nautical skill could not have prevented."  Martinez v. U.S., 705 F.2d 658, 661 (2d Cir. 1983) (citing The Louisiana, 70 U.S. at 173).  Essentially, the Louisiana rule shifts the burden to the ship's owner to show that he was not negligent.  See The Charles H. Sells, 39 F.2d 631, 633 ("it means no more than that the vessel must show herself free from 'fault' in the ordinary sense").  Therefore, to prevail on his Motion for Summary Judgment, Costa must show that no

issue of material fact exists as to whether Crowley was negligent in securing the Moondance.

In admiralty and maritime cases, "determination of negligence involves first the formulation and then the application of a standard of conduct to evidentiary facts found to be established." Mamiye Bros. v. Barber S. S. Lines, 360 F.2d 774, 776 (2d Cir. 1996) (internal citations omitted). "The elements to establish a claim of negligence under maritime law are the same as the elements of negligence under common law. These elements include duty, breach of that duty, and causation." In re Re, No. 07-CV-223-JFB, 2008 WL 4069747 at *3 (E.D.N.Y. Aug. 27, 2008) (citing Petition of Kinsman Transit Co., 338 F.2d 708, 721 (2d Cir.1964)). Judge Learned Hand famously formulated the applicable duty as follows: "Since there are occasions when every vessel will break from her moorings, and since, if she does, she becomes a menace to those about her; the owner's duty, as in other similar situations, to provide against resulting injuries is a function of three variables: (1) The probability that she will break away; (2) the gravity of the resulting injury, if she does; (3) the burden of adequate precautions." United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d Cir. 1947). In general, the standard for negligence in admiralty and maritime is the familiar, reasonably prudent person under the circumstances. See, e.g., Rainey v. Paquet Cruises, 709 F.2d 169, 171 (2d Cir. 1983).

Costa cites the testimony of Harbor Master Robert Scinto that "it would . . . be a practice of the prudent boater" to inspect a moored vessel prior to a predicted storm. See Defs.' Mot. for Summ. J. 23; Defs.' L.R. 56(a)(1) Stmt. ¶¶ 53, 55. Crowley characterizes Scinto's testimony differently: that the moorings should have been

adequate and that any extra lines should only be put out in the calm before the storm. Pls.' L.R. 56(a)(2) Stmt. ¶¶ 12, 13.  Crowley also cites the testimony of Edward Billings, the General Manager of the Black Rock Yacht Club, that the Moondance's moorings were sufficient.  See Pls. Cross- Mot. 16.  See also Pls' L.R. 56(a)(2) Stmt. ¶ 10 ("Billings believed the MOONDANCE was properly fitted and equipped to be securely moored in that location throughout the season under the expected weather conditions"); Defs.' Resp. to Pls.L.R. 56(a)(2) Stmt (Doc. 51-10) ¶ 10 (agreeing).  Thus, Crowley has raised a triable issue of material fact as to whether his actions in securing the Moondance before his trip were the actions of a reasonably prudent person under the circumstances.

      2.      Crowley's Entitlement to Limitation of Liability

Costa argues that Crowley is not entitled to a limitation of liability under the Limitation of Liability Act, 46 U.S.C. §§ 30501-30512, because the Act only limits liability for claims arising out of events about which the owner lacked "privity or knowledge."  45 U.S.C. §30505(b).  "The phrase 'privity or knowledge' is a 'term of art meaning complicity in the fault that caused the accident."  In Re Complaint of Messina, 574 F.3d 119, 126 (2d Cir. 2009) (quoting Blackler v. F. Jacobus Transp., 243 F.2d 733, 735 (2d Cir. 1957).  The determination that privity or knowledge existed is a factual inquiry.  See Coryell v. Phipps, 317 U.S. 406, 411 (1943).  To establish privity or knowledge, courts follow a two-step inquiry.  See In re Complaint of Messina, 574 F. 3d at 126.  First, the claimant must show that there was actionable conduct that caused the injury.  See id.  Then, the ship's owner must establish that he lacked privity or knowledge of the actionable conduct.  See id. at 126-27.

9

Because neither party has alleged that any other actor besides Costa was or should have been responsible for securing the Moondance, the only person who could have undertaken "actionable conduct" is Crowley himself. There is no question that whatever acts were or were not taken to secure the Moondance were or were not taken by Crowley. Therefore, the only issue is whether there was actionable conduct.

To determine whether there was actionable conduct, "[t]he test is, could the collision have been prevented by the exercise of ordinary care, caution and maritime skill?" The Jumna, 149 F. 171, 173 (2d Cir. 1906). The burden of proving actionable conduct is on the claimant. See In re Complaint of Messina, 574 F.3d at 126. To prevail at this stage, Costa must show that Crowley has raised no material factual question as to whether the allision could have been prevented by ordinary skill and caution. As discussed above, there remain triable issues of fact as to whether Crowley exercised ordinary care. See supra at 9.

## VI.  CONCLUSION

For the reasons discussed above, Costa's Motion for Summary Judgment (Doc. No. 36) is **DENIED**, and Crowley's Cross-Motion for Summary Judgment (Doc. No. 42) is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 17th day of November, 2011.

                                                  /s/ Janet C. Hall
                                                 Janet C. Hall
                                                 United States District Judge